JEFFREY PAUL TRIVETTE, Plaintiff v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant

No. COA03-986

(Filed 1 June 2004)

**Insurance— automobile—UIM coverages—stacking—two policies—highest applicable limit**

The trial court did not err by concluding that N.C.G.S. § 20-279.21(b)(3) prohibited stacking the underinsured motorists (UIM) coverages at bar and by granting defendant's motion for summary judgment. The plain language of plaintiff's policy and the policy issued by defendant to plaintiff's parents, with whom plaintiff lived, plainly and clearly limits plaintiff's recovery to the highest applicable limit. Plaintiff's interpretation of the statute would allow those who are not named insureds to stack coverage limits and receive a UIM windfall denied to named insureds who pay premiums for UIM coverage.

Judge TIMMONS-GOODSON concurring in the result.

Appeal by plaintiff from judgment entered 27 May 2003 by Judge Russell G. Walker, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 21 April 2004.

*Lewis & Daggett, Attorneys at Law, P.A., by Michael P. Williams, for plaintiff-appellant.*

*Kent L. Hamrick, for defendant-appellee.*

TYSON, Judge.

Jeffrey Paul Trivette ("plaintiff") appeals from a judgment granting summary judgment for State Farm Mutual Automobile Insurance Company ("defendant") and denying plaintiff's motion for summary judgment. We affirm.

## I. Background

On 17 August 2000, plaintiff was operating his vehicle and was hit by a 1992 Ford owned by Jose Hernandez ("Hernandez"). At the time of the accident, a policy issued by New South Insurance Company ("New South") provided Hernandez with liability limits of $25,000.00 per person and $50,000.00 per accident. Plaintiff claimed damages for bodily injuries sustained in the accident and was paid the per person liability limit of $25,000.00 in Hernandez's policy.

Plaintiff owned an automobile insurance policy issued by Integon Casualty Insurance Company ("Integon") that provided uninsured motorist ("UM") coverage limits of $30,000.00 per person and $60,000.00 per accident. Plaintiff also filed a UM claim with Integon, contending Hernandez was underinsured. Integon agreed and paid plaintiff $5,000.00, the difference between Hernandez's policy limits and Integon's per person limit.

At the time of the accident, plaintiff lived with his parents who were named insureds under an automobile policy issued by defendant. This policy contained UM limits of $50,000.00 per person and $100,000.00 per accident. Plaintiff claimed damages for bodily injury in excess of the $30,000.00 received from New South and Integon. Defendant contended entitlement to a credit or setoff for the $25,000.00 liability paid by New South and the $5,000.00 UM payment previously paid by Integon. Defendant paid plaintiff $20,000.00 under the UM coverage and claimed it had met the policy's per person UM limit of $50,000.00.

On 3 October 2002, plaintiff filed a declaratory judgment action alleging defendant owed additional UM liability payments under the policy. Plaintiff contended the UM limits under all the insurance policies should be "stacked" or combined and that defendant was not entitled to a credit or setoff for the payments made by New South and Integon. Defendant denied further UM liability and filed a motion for summary judgment on 21 April 2003. Plaintiff filed his motion for summary judgment on 14 May 2003. After reviewing the documents and hearing oral arguments, the trial court granted

defendant's motion and dismissed the complaint with prejudice. Plaintiff appeals.

## II. Issue

The sole issue is whether the trial court erred in granting defendant's motion for summary judgment and concluding inter-policy stacking of UM coverage was prohibited by N.C. Gen. Stat. § 20-279.21(b)(3).

## III. Standard of Review for Summary Judgment

Plaintiff contends the trial court erred in granting defendant's motion for summary judgment and in concluding that N.C. Gen. Stat. § 20-279.21(b)(3) prohibits inter-policy stacking of UM coverage here.

Our standard to review the granting of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707-08, 582 S.E.2d 343, 345 (2003), *aff'd*, 358 N.C. 137, 591 S.E.2d 520 (2004), *reh'g denied*, 2004 N.C. Lexis 520 (N.C. May 6, 2004) (citing *Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. rev. denied*, 354 N.C. 371, 555 S.E.2d 280 (2001)); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

> A defendant may show entitlement to summary judgment by "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense."

*Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)).

" 'Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.' " *Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000)).

## IV. N.C. Gen. Stat. § 20-279.21(b)(3)

In 1991, our Legislature amended the Financial Responsibility Act to provide when UM coverage could be aggregated or stacked.

> Where coverage is provided on more than one vehicle insured on the same policy or where the owner or the named insured has more than one policy with coverage under this subdivision, there shall not be permitted any combination of coverage within a policy or where more than one policy may apply to determine the total amount of coverage available.

N.C. Gen. Stat. § 20-279.21(b)(3) (2001).

Plaintiff argues the anti-stacking provisions of the statute do not apply because he was neither defendant's insured nor the owner of any vehicle covered by defendant's policy. We disagree.

In *Hoover v. State Farm Mut. Ins. Co.*, plaintiff was injured by an uninsured motorist while driving a vehicle he jointly owned with his employer, 156 N.C. App. 418, 576 S.E.2d 396, 397 (2003). Plaintiff owned an insurance policy with UM coverage of $250,000.00 per person on the jointly owned automobile. *Id.* His employer owned an insurance policy with UM coverage of $1,000,000.00 per person on the same automobile. *Id.* Plaintiff sought to stack the UM coverage from both policies. *Id.* at 419, 576 S.E.2d at 397. The insurance carriers argued that UM coverage was capped at the higher limit of the two policies or $1,000,000.00. *Id.* The trial court granted summary judgment for the carriers and concluded that N.C. Gen. Stat. § 20-279.21(b)(3) prohibited inter-policy stacking of UM coverage. *Id.* This Court affirmed the trial court's decision and held:

> It is illogical that an individual who has purchased multiple UM policies and who pays multiple insurance premiums for those policies would not be allowed to stack coverage from those policies but an individual who has only one UM policy and is injured while driving another's vehicle for which the individual may have third party UM coverage could stack coverage.

*Id.* at 420, 576 S.E.2d at 398.

Here, plaintiff received $25,000.00 from Hernandez's policy and another $5,000.00 from his own policy, which provided UM coverage limits of $30,000.00 per person. Plaintiff then sought to recover an additional $50,000.00 of UM coverage from his parents' insurance policy issued by defendant. Plaintiff paid no premiums for this policy.

Plaintiff was covered under this policy solely because he was a resident within his parents' home. The policy at bar contained a clause that limited defendant's UM liability to the highest amount in either policy if both policies covered the same accident:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum amount payable for all injuries caused by an uninsured motor vehicle under all policies shall not exceed the highest applicable limit of liability under any one policy.

Plaintiff's insurance policy issued by Integon contained virtually the same provision. These two policies unambiguously limit total UM coverage under both policies to the higher of the two limits, which is $50,000.00 under the policy issued by defendant.

In *Government Employees Insurance Co. v. Herndon*, this Court reviewed two policies with clauses virtually identical to those at bar and held, "[t]here is no ambiguity in the language used in GEICO's policies. Recovery under both policies is clearly limited to the highest applicable limit of liability under any one policy." 79 N.C. App. 365, 368, 339 S.E.2d 472, 474 (1986). Where there is no ambiguity in a policy's language, the courts must apply the plain meaning of the policy language and enforce the policy as written. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

As plaintiff received UM coverage from his own policy and his parents' policy, we hold plaintiff "has more than one policy with coverage under this subdivision" and is not entitled to stack UM coverage limits under the policies. The plain language of both policies clearly limits the total UM coverage to the "highest applicable limit of liability under any one policy." Plaintiff was paid $30,000.00: $25,000.00 for his personal injuries from Hernandez's policy and $5,000.00 in UM coverage from his own policy. Between his policy and defendant's policy, the "highest applicable limit" was $50,000.00. As plaintiff had already been paid $30,000.00, defendant was liable for $20,000.00, to bring the total amount to the "highest applicable limit" of $50,000.00.

Adopting plaintiff's interpretation of N.C. Gen. Stat. § 20-279.21(b)(3) would allow those who are not named insureds on a policy to stack coverage limits and receive a UM windfall while denying equal treatment to named insureds who actually pay the premiums for UM coverage. This "illogical" conclusion is unsup-

ported by amended N.C. Gen. Stat. § 20-279.21 and precedent. *Hoover*, 156 N.C. App. at 420, 576 S.E.2d at 398. The trial court did not err by granting defendant's motion for summary judgment. Plaintiff's assignment of error is overruled.

### V.  Conclusion

The trial court did not err in concluding that N.C. Gen. Stat. § 20-279.21(b)(3) prohibited stacking the UM coverage at bar and in granting defendant's motion for summary judgment. The plain language of plaintiff's policy and the policy issued by defendant plainly and clearly limits plaintiff's recovery to the "highest applicable limit." The trial court's judgment is affirmed.

Affirmed.

Judge McGEE concurs.

Judge TIMMONS-GOODSON concurs in the result by separate opinion.

TIMMONS-GOODSON, Judge, concurring in the result.

I agree with the majority that the trial court did not err in granting summary judgment in favor of defendant. However, unlike the majority, I believe the trial court's decision is supported more by the language of the applicable insurance policies than by N.C. Gen. Stat. § 20-279.21 and *Hoover*. Therefore, I write separately to distinguish the reasoning behind my conclusion.

Because the words used in an insurance company's policy are chosen by the insurance company itself, "any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "However, ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Id.* Instead, ambiguity exists only where, in the opinion of the court, the language of the policy is "fairly and reasonably susceptible to" differing interpretations by the parties. *Id.* Where there is no ambiguity in a policy's language, courts "must enforce the contract as the parties have made it[,] and [courts] may not, under the guise of interpreting an ambiguous provision, remake the contract and impose

liability upon the company which it did not assume and for which the policyholder did not pay." *Id.*

In *Government Employees Insurance Co. v. Herndon*, 79 N.C. App. 365, 339 S.E.2d 472 (1986), this Court reviewed two policy clauses similar to those in the instant case. Noting that "[r]ecovery under both policies is clearly limited to 'the highest applicable limit of liability under any one policy,' " we concluded there was "no ambiguity in the language used" in the policies, and we held that the defendants were not allowed to "stack" uninsured motorist compensation claims. *Id.* at 368, 339 S.E.2d at 474.

In the instant case, the policy of plaintiff's parents with defendant reads as follows:

> If this policy and any other auto insurance policy issued to you apply to the same accident, the maximum payable for injuries to you or a ***family member*** caused by an ***underinsured motor vehicle*** shall be the sum of the highest limit of liability for this coverage under each such policy.

(emphasis in original). According to the record, plaintiff's own policy with Integon contained the same provision. I conclude the plain and unambiguous language of both policies clearly limits the total underinsured motorist coverage to the "highest applicable limit of liability" for underinsured motorist coverage under each policy.

Plaintiff's Integon policy offered him $30,000 in underinsured motorist coverage, while his parent's policy with defendant offered him $50,000 in underinsured motorist coverage. Accordingly, defendant was only responsible for underinsured motorist coverage up to $50,000, the "highest applicable limit of liability" under the two policies. Hernandez's policy paid plaintiff $25,000 for his personal injuries, while plaintiff's own Integon policy paid plaintiff $5,000 in underinsured motorist coverage. Therefore, under the unambiguous terms of the insurance policies, defendant was liable only for the $20,000 necessary to bring the total amount paid to plaintiff to $50,000, and plaintiff was not entitled to stack underinsured motorist coverage limits under the two policies.

For the reasons discussed above, I agree with the majority that the trial court did not err in granting defendant's motion for summary judgment.